**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ROBERT PERRY, et al.,                              No. CIV S-11-0216-GEB-CMK

             Plaintiffs,

     vs.                                                   <u>FINDINGS AND RECOMMENDATIONS</u>

JP MORGAN CHASE BANK, N.A., et al.,

             Defendants.

_____/

        Plaintiffs, proceeding in this action in propria persona, bring this civil action related to the foreclosure of their property.   This action was removed to this court from the Shasta County Superior Court on January 24, 2011.   Pending before the court is defendants' motion to dismiss (Doc. 6).  The hearing on the motion was taken off calendar pursuant to Local Rule 230(g) as the opposition was not filed within the time provided.[1]

/ / /

---

[1]   The hearing on the motion to dismiss was set before the undersigned on April 7, 2011.  No opposition was on the docket as of April 1, 2011, the date the undersigned signed the order taking the hearing off calendar.  Plaintiffs' opposition had, however, been received by the court on March 31, 2011, and was docketed on April 1, 2011.  This untimely opposition was not received in time to preserve plaintiffs' right to be heard in opposition, but has been considered in these findings and recommendations.  <u>See</u> Local Rule 230(c).

## I.     Background

This foreclosure action was removed from state court to this court on January 24, 2011, by defendants.  The complaint alleges claims of wrongful foreclosure, fraudulent misrepresentation, quiet title, usury and fraud, and civil RICO violations.  Defendants move to dismiss for failure to state a claim in regard to all claims, for failure to specifically plead fraud, that claims are untimely and barred by the applicable statutes of limitations, and that JP Morgan did not assume the liability for those claims related to the loan agreement between the borrowers and Washington Mutual Bank.

Plaintiffs allege in their complaint, and submit exhibits showing, they entered into a promissory note with Washington Mutual on or about June 20, 2007, which was secured by a deed of trust.  The deed of trust was recorded on June 25, 2007 in Shasta County.  On or about August 10, 2010, a notice of default was recorded in the Shasta County Recorder's Office. Plaintiffs further acknowledge in the complaint that Washington Mutual was "taken over and closed by the  Office of Thrift Supervision and the FDIC" on or about September 25, 2008, and that JPMorgan Chase is the successor in interest of Washington Mutual.  (Complaint at 5-6.)

## II.    Motion to Dismiss

Defendants filed the motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  Defendants argue plaintiffs fail to allege facts sufficient to state a claim, and are vague, ambiguous, and untimely.  In plaintiffs' untimely response to the motion, they fail to dispute any of defendants' arguments.  Instead, they rely on the complaint as plead, and ask for leave to amend if the court finds the complaint insufficient.

### A.     Legal Standards

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425

2

U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp., 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id. (quoting Bell Atl. Corp., 550 U.S. at 557).

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454;

1   (2) documents whose authenticity is not in question, and upon which the complaint necessarily

2   relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668,

3   688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice,

4   see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

5        Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

6   amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

7   curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

8        **B.    Discussion**

9        1.  Assumption of Liability by JP Morgan

10        Defendants argue they did not assume any liability arising from the loan when

11   JPMorgan took over Washington Mutual's assets.  Defendants cite to several cases wherein

12   various courts have found no liability was assumed for claims arising prior to the acquisition of

13   Washington Mutual's assets.  See e.g., Walsh v. JPMorgan Chase Bank, No. CV 09-04387, 2009

14   U.S. Dist. LEXIS 126251, at *1 (C.D. Cal. Dec. 8, 2009).  Indeed, this court has taken judicial

15   notice of the Purchase and Assumption Agreement between JPMorgan Chase and the Federal

16   Deposit Insurance Corporation (FDIC).  See Jennings Washington Mutual Bank, et al.,

17   10cv2126-FCD-CMK.  The Agreement specifically provides in part:

18        2.5  Borrower Claims - Notwithstanding anything to the contrary in
         this Agreement, any liability associated with borrower claims for
19        payment of or liability to any borrower for monetary relief, or that
         provide for any other form of relief to any borrower, . . . related in
20        any way to any loan or commitment to lend made by the Failed
         Bank prior to failure . . . are specifically not assumed by the
21        Assuming Bank.

22   (See Jennings Washington Mutual Bank, et al., 10cv2126-FCD-CMK, Doc. 10).[2]

23

24        [2]    The court may take judicial notice pursuant to Federal Rule of Evidence 201 of
     matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).
25   Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp.
     of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S.,
26   378 F.2d 906, 909 (9th Cir. 1967).  The undersigned finds it appropriate to take judicial notice of

1    Accordingly, this court agrees that JPMorgan did not assume any liability arising

2  prior to JPMorgan's assumption of Washington Mutual's assets.[3]  Plaintiffs' claims related to the

3  formation of the loan agreement cannot, therefore, be maintained against the defendants in this

4  action.

5    2.  Wrongful Foreclosure

6    Here, plaintiffs dispute whether or not the defendants have the authority to

7  foreclose under the Deed of Trust, and whether their note was part of the acquisition of

8  Washington Mutual's assets.  Plaintiffs argue that the defendants have provided no evidence that

9  their loan was in fact assumed by JPMorgan.  In addition, plaintiffs claim that the defendants

10 failed to respond to a Qualified Written Request (QWR).

11    Defendants argue that plaintiffs' claim fails on its face as they have not alleged

12 any ability or willingness to tender the amount owed under the note.  In addition, defendants

13 argue that plaintiffs' claim that the defendants are required to produce evidence of a chain of

14 ownership, and their citations to the Uniform Commercial Code Articles 3 and 9, is essentially a

15 claim that they produce a copy of the original promissory note, which fails to state a claim.

16 Finally, defendants argue that to the extent plaintiffs claim they do not have standing to enforce

17 the foreclosure, such a claim lacks merit.  Defendants point to the Deed of Trust, attached as an

18 exhibit to the complaint, wherein defendant California Reconveyance Company (CRC) is

19 identified as the trustee, with the power of sale in case of a default.  As a trustee has the authority

20 to conduct the foreclosure process, defendants do in fact have standing.

21 / / /

22

23 the agreement here.

24    [3]    The United States District Court for the Central District of California found that
   JPMorgan is liable for claims arising after the assumption of assets. See Walsh v. JPMorgan
25 Chase Bank, No. CV 09-04387, 2009 U.S. Dist. LEXIS 126251, at *1 (C.D. Cal. Dec. 8, 2009).
   However, the issue in this case is the opposite.  Here, most of the alleged violations occurred at
26 the time the loan was executed, not after JPMorgan's assumption of Washington Mutual.

1          The court notes that plaintiffs' allegations appear to be a "produce the note" type

2   of claim.  Such claims have universally been rejected.  See e.g. Pagtalunan v. Reunion Mortgage

3   Inc., 2009 WL 961995 (N.D. Cal. 2009); Puktari v. Reconstruct Trust Co., 2009 WL 32567 (S.D.

4   Cal. 2009); see also California Trust Co. v. Smead Inv. Co., 6 Cal. App. 2d 432 (1935) (holding

5   that production of the original note is not required in a non-judicial foreclosure).  This is the

6   basis for plaintiffs' claim that defendants lack authority to conduct the foreclosure process.  To

7   the extent plaintiffs are attempting to state such a claim, this claim should be dismissed as non-

8   cognizable.

9          To the extent plaintiffs argue the defendants failed to respond to their QWR,

10   plaintiffs fail to provide sufficient support for such a claim.  The Real Estate Settlement

11   Procedures Act (RESPA), requires mortgage loan servicers who receive a QWR for information

12   relating to the servicing of a loan to provide a written response acknowledging receipt of the

13   correspondence within 20 days.  12 U.S.C. § 2605(e)(1)(A).  Here, plaintiffs do not provide any

14   specific facts related to the alleged QWR they sent, rather they simply make conclusory

15   allegations that defendants failed to respond.  There are no factual allegations detailing what

16   plaintiffs included in their QWR, such as the required statement of reasons as to why the

17   borrowers believe the account is in error or sufficient detail regarding the information sought.

18   See 12 U.S.C. § 2605(E)(1)(b).  Plaintiffs also fail to allege when their request was sent, thus

19   leaving doubt as to when the time had passed for the defendants to respond.[4]  Finally, plaintiffs

20   fail to alleged any pecuniary loss from defendants' alleged failure to respond to the QWR, which

21   renders the claim insufficient.  See Saldate v. Wilshire Credit Corp., 711 F. Supp. 2d 1126, 1134

22   (E.D. Cal. 2010).  Plaintiffs simply make the conclusory statement that due to the actions of the

23

24          [4]   Plaintiffs refer to an Exhibit C to their complaint in support of the allegation that
defendants failed to respond to the QWR.  However, a review of the complaint shows that
25   Exhibit C is the notice of default, recorded on August 11, 2010, not a QWR.  In fact, it does not
appear that the QWR is attached as an exhibit to the complaint.  As defendants also note, there is
26   no Exhibit B which is referred to in the body of the complaint as the notice of default.

1  defendants, they have been damaged in an amount in excess of $1,200,000.00.  This amount does

2  not appear to be related to the defendants' alleged failure to respond to the QWR, but to the

3  foreclosure in general.  Such failure is fatal to this claim.

4          Thus, plaintiffs' fail to state a cognizable claim for wrongful foreclosure, and the

5  motion to dismiss should be granted.

6                    3.  Fraudulent Misrepresentation (Fraud)

7          Plaintiffs claim fraud based the concealment of material information from plaintiff

8  both before and after closing.  Plaintiffs do not specify what misrepresentations were made, what

9  material information was concealed, or who was responsible for either.

10         The elements of a California fraud claim are: (1) misrepresentation (false

11  representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3)

12  intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  Lazar

13  v. Superior Court, 49 Cal. Rptr. 2d 377, 380-81 (Cal. 1996).  In addition, Federal Rule of Civil

14  Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with

15  particularity."  This heightened pleading standard "requires a pleader of fraud to detail with

16  particularity the time, place, and manner of each act of fraud, plus the role of each defendant in

17  each scheme." Lancaster Cmty. Hosp. v. Antelope Valley Dist., 940 F.2d 397, 405 (9th Cir.

18  1991). Thus, "allegations of fraud must be specific enough to give defendants notice of the

19  particular misconduct which is alleged to constitute the fraud charged so that they can defend

20  against the charge and not just deny that they have done anything wrong." Bly-Magee v.

21  California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

22         Rule 9(b)'s heightened pleading standard "is not an invitation to disregard Rule

23  8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance

24  of unnecessary discovery." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). "A pleading

25  is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the

26  defendant can prepare an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d

666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing <u>Gottreich v. San Francisco Inv.</u>

<u>Corp.</u>, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . . In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

<u>In Re Glenfed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in

original) *superseded by statute on other grounds as stated in* <u>Marksman Partners, L.P. v. Chantal</u>

<u>Pharm. Corp.</u>, 927 F. Supp. 1297 (C.D. Cal. 1996); <u>see</u> <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th

Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of

the misconduct charged).

   Here, defendants argue plaintiffs' complaint is insufficient to state a claim for

fraud.  Plaintiffs' fraud claim is based on allegations that misrepresentations were made relating

to the loan.  As discussed above, the loan was made by Washington Mutual, not JPMorgan

Chase.  Thus, to the extent the alleged fraudulent misrepresentations were made by Washington

Mutual, such claims cannot survive against JPMorgan Chase.

   In addition, plaintiffs' allegations related to the fraud claims are too vague to

satisfy the pleading requirements of Rule 9.  Plaintiffs allege the defendants "knowingly and

intentionally concealed material information" and "materially misrepresented information . . .

with full knowledge . . . that their affirmative representations . . . were false, fraudulent, and

misrepresented the truth at the time said misrepresentations were made, up to an through the date

of this pleading." (Complaint at 10). They further allege that had they known the defendants' representations were false, they would not have entered into the agreement with the defendants. These vague allegations are insufficient, and fail to put the defendants on notice as to what actions were fraudulent. Plaintiffs fail to explain what the alleged misrepresentations were, how they were misleading, and when these misrepresentations were made. It is worth noting that based on the allegations made, specifically that had plaintiffs known of the falsity of the representations, they would not have entered into the transaction, it appears that the only fraud alleged relates to the formation of the loan. Thus, it does not appear that any of the allegations relate to JPMorgan Chase. Therefore, the motion to dismiss the fraud claims should be granted.

### 4. Quiet Title

Plaintiffs do not identify any specific authority for the quiet title claim, other than noting the California Civil Code in general. They argue that because it is unclear if the defendants have a legal right to foreclose on their property, they may be subject to a second liability if someone else comes forth with a perfected lien. They are requesting to have the deed of trust nullified. Defendants argue that a claim for quite title is essentially a claim for rescission, which requires an offer to tender and plaintiffs fail to allege either willingness or ability to tender.

California law provides "An action may be brought . . . to establish title against adverse claims to real or personal property or any interest therein." Cal. Code Civ. Proc. § 760.020(a). To state a claim for quiet title, a complaint must include: (a) a description of the property that is the subject of the action; (b) plaintiff's title and the basis for that title; (c) the adverse claims to plaintiff's title; (d) the date as of which the determination is sought; and (e) a prayer for the determination of the title of the plaintiff against the adverse claims. Cal. Code Civ. Proc. § 761.020. A quiet title claim also requires the plaintiff to allege that he or she is the rightful owner of the property in that he or she has satisfied all obligations under the deed of trust. See Kelley v. Mortgage Electronic Registration Systems, Inc., 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). This requires a plaintiff to allege that he or she has paid, or tendered payment of, the

9

1   full amount due under the mortgage.  See Shimpones v. Stickney, 219 Cal. 637, 649 28 P.2d 673

2   (1934); see also, United States Cold Storage v. Great Western Sav. & Loan Ass'n, 165 Cal. App.

3   3d 1214, 1222 (1985) (explaining "the law is long-established that a trustor or his successor must

4   tender the obligation in full as a prerequisite to challenge of the foreclosure sale.").

5       Here, plaintiffs fail to allege either their willingness or their ability to tender the

6   amount due pursuant to the loan agreement.  Thus, their claim for quiet title must fail, and the

7   motion to dismiss should be granted.

8       5.  Usury and Fraud

9       To the extent plaintiffs are claiming fraud, the discussion above applies here as

10  well, including the lack of plausible facts suggesting fraud.  In addition, however, plaintiffs set

11  forth a claim for usury.  Plaintiffs' claims are unclear, but it appears that they are attempting to

12  challenge the interest rate on the loan as well as the defendants' profits therefrom.

13      The elements of a claim for usury under California law are: "(1) The transaction

14  must be a loan or forbearance; (2) the interests to be paid must exceed the statutory maximum; (3)

15  the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a

16  willful intent to enter into a usurious transaction."  Ghirardo v. Antonioli, 8 Cal.4th 791, 798, 35

17  Cal. Rptr. 2d 418 (1994).

18      As discussed above, this claims appears to relate to the formation of the loan, and

19  would thus be against Washington Mutual and not JPMorgan Chase.  Nor was this liability

20  assumed by JPMorgan Chase.  In addition, plaintiffs fails to make allegations about the loan's

21  actual interest rate.  They allege that "[t]he 'formula break' a reference to these laws was exceeded

22  by a factor in excess of 10, contrary to the applicable law."  (Complaint at 14).  However, they fail

23  to sufficiently allege how the interests actually exceeded the statutory maximum rate.  Thus, the

24  claim for usury and fraud should be dismissed.

25  ///

26  ///

1          6.  Racketeer Influenced and Corrupt Organizations Act (RICO)

2          Plaintiffs' final claim is a violation of RICO, 18 U.S.C. §§ 1961-1968.  The allege

3  RICO violation set forth in the complaint is that the defendants knew their actions and those of the

4  other defendants were in violation of the law.  Plaintiffs further allege that the defendants chose to

5  facilitate the unlawful actions of each other.

6          To state a claim under RICO, a plaintiff must allege the existence of a RICO

7  enterprise, the existence of a pattern of racketeering activity, a nexus between the defendant and

8  either the pattern of racketeering activity or the RICO enterprise, and a resulting injury to the

9  plaintiff.  See Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co., 711 F. Supp. 1016,

10  1021 (E.D. Cal. 1989).  To allege a pattern of racketeering activity, a plaintiff must allege two or

11  more predicate acts.  See Sun Sav. & Loan Ass'n v. Dierdorff, 825 F.2d 187, 193 (9th Cir. 1987).

12  When the alleged racketeering activity sounds in fraud, the complaint must "state with

13  particularity the circumstances constituting fraud or mistake."  In re Countrywide Fin. Corp.

14  Mortg. Mktg. & Sales Prac. Lit., 601 F. Supp. 2d 1201, 1215 (S.D. Cal. 2009) (quoting Fed. R.

15  Civ. P. 9(b)) (internal quotation mark omitted).  As set forth above, to satisfy Rule 9(b) in this

16  context, the plaintiff must "state the time, place, and specific content of the false representations

17  as well as the identities of the parties to the misrepresentation."  Id. (quoting Edwards v. Marin

18  Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)) (internal quotation marks omitted).

19          Plaintiffs do not sufficiently plead the existence of a pattern of racketeering activity

20  in their complaint, nor do they sufficiently plead the existence of an enterprise under 18 U.S.C. §

21  1961(4).  This claim also sounds in fraud and plaintiffs have not provided the requisite

22  particularity to support such a claim.  See Fed. R. Civ. P. 9(b).  Accordingly, the motion to

23  dismiss the RICO claim should be granted.

24          **III.    Conclusion**

25          Plaintiffs' complaint fails allege sufficient facts to state a claim.  Thus, defendants'

26  motion to dismiss should be granted in full.  Leave to amend must be granted "[u]nless it is

1   absolutely clear that no amendment can cure the defects." <u>Lucas v. Dep't of Corr.</u>, 66 F.3d 245,

2   248 (9th Cir. 1995) (per curiam); <u>see also</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 (9th Cir. 2000)

3   (en banc).  Here, however, given plaintiffs' lack of opposition to this motion, and lack of factual

4   allegations contained in the original complaint, it is clear that they are unable to amend their

5   claims sufficiently to state a claim.[5]  Thus, the undersigned recommends no leave to amend be

6   granted.

7               Based on the foregoing, the undersigned recommends that defendants' motion to

8   dismiss (Doc. 6) be granted, without leave to amend.

9               These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

11  after being served with these findings and recommendations, any party may file written objections

12  with the court.  Responses to objections shall be filed within 14 days after service of objections.

13  Failure to file objections within the specified time may waive the right to appeal.  <u>See</u> <u>Martinez v.</u>

14  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15

16

17  DATED:  June 6, 2011

18                                          _____
                                            **CRAIG M. KELLISON**
19                                          UNITED STATES MAGISTRATE JUDGE

20

21

22

23         [5]      Plaintiffs have an opportunity, in filing objections to these findings and
    recommendations, to set before the court their ability to cure the defects outlined herein.  If
24  plaintiffs are in fact able and willing to tender the amount due under the terms of the loan
    agreement in order to satisfy the pleading requirements for stating a claim for quieting title,
25  and/or specific facts related to the alleged QWR they claim was sent and damages resulting
    therefrom, then leave to amend may be granted.  Absent such assertions, however, no defect in
26  the claims addressed herein is otherwise curable.